UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
EDWIN ROMERO,
                                    :
            Petitioner,             **REPORT & RECOMMENDATION**
                                    :
      -against-                        05 Civ. 5339
                                    :     (RCC)(MHD)
WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,:

            Respondent.             :
---------------------------------x

**TO THE HONORABLE RICHARD C. CASEY, U.S.D.J.:**


      Pro se petitioner Edwin Romero seeks a writ of habeas corpus
to challenge his 2000 conviction in New York State Supreme Court,
Bronx County, on two counts of Robbery in the Second Degree. The
trial court sentenced Romero, as a persistent violent felony
offender, to two concurrent indeterminate terms of twenty years to
life. Romero also challenges his 2001 conviction in New York State
Supreme Court, Bronx County, by a guilty plea, on a single count of
Robbery in the Second Degree. On that charge, the trial court
sentenced Romero, as a persistent violent felony offender, to an
indeterminate term of sixteen years to life, to run concurrently
with the sentence imposed after the 2000 trial. Romero is currently
incarcerated pursuant to these sentences.


      In support of the petition, Romero advances five grounds for
relief. He alleges: (1) that his federal constitutional right to

1

trial before an impartial jury was violated when, during jury selection, the trial court failed to grant defense counsel's challenge for cause to a prospective juror; (2) that his 2001 guilty plea must be vacated if he is granted the writ on his 2000 conviction, because that plea was induced by a promise of a sentence to run concurrently with that imposed on his 2000 trial conviction; (3) that the trial court erred in sentencing him as a persistent violent felony offender because the crimes used to adjudicate him as such did not fulfill the "sequentiality requirement" of New York Penal Law § 70.04[1]; (4) that the trial court's adjudication of him as a persistent violent felony offender violated his Sixth and Fourteenth Amendment rights and his rights under Apprendi v. New Jersey, 530 U.S. 466 (2000); and (5) that his trial counsel was ineffective for failing to contest his adjudication as a persistent violent felony offender. (See Petition for Writ of Habeas Corpus filed April 26, 2005 ("Pet.") at ¶ 13).

In opposition, respondent argues that petitioner's claim that the trial court improperly denied his for-cause challenge of a juror is not cognizable under habeas review. (Respondents Memorandum of Law ("Resp. Memo") at 10-14). Respondent further

---

[1] Petitioner claims in Point Three of his habeas petition that "his due process rights were violated by the court waiving his right to an enhancement hearing." We have interpreted his argument as targeting section 70.04. (See Pet. at ¶ 13).

asserts that petitioner's plea claim is unexhausted because he failed to raise it in constitutional terms on appeal and that his claims concerning sequentiality and <u>Apprendi</u> are also unexhausted since he failed to raise them on his leave application from the denial of his Crim. Proc. L. § 440.20 motion. (<u>Id.</u> at 3-7). Additionally, respondent contends that under 28 U.S.C. 2254(b)(2), these claims may be rejected on the merits. (<u>Id.</u> at 7-9). Finally, respondent asserts that the state court's rejection of petitioner's ineffective-assistance-of-counsel claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and thus petitioner's claim cannot prevail. (<u>Id.</u> at 15-18).

For the reasons that follow, we conclude that all of petitioner's claims are meritless. We therefore recommend that the writ be denied and the petition dismissed with prejudice.

## Background

### I. Pretrial Proceedings

On October 12, 1999, a Bronx County grand jury indicted petitioner, charging him with one count of acting in concert with another in the commission of Robbery in the First Degree, two counts of Robbery in the Second Degree, and one count each of

Robbery in the Third Degree, Assault in the Second Degree, Grand Larceny in the Fourth Degree, and Criminal Possession of Stolen Property in the Fifth Degree. (See Affidavit of Assistant District Attorney Nancy D. Killian, sworn to September 23, 2005 ("Killian Aff."), Ex. 2 at 3).[2] These charges stemmed from an incident on September 14, 1999, when two men followed their intended victim into the elevator of his apartment building, and proceeded to rob him and hit him in the face with a metal object. Petitioner subsequently told a detective who was assigned to investigate the attack that he and another man had followed an old man into an elevator in his apartment building and robbed him. (Id. at 6). Three days after the assault, three individuals identified petitioner in a lineup. (Id.).

II. Voir Dire

Petitioner proceeded to trial on the charges relating to the September 14, 1999 incident. The trial was conducted before the Honorable Norman Ruiz, S.C.J., and a jury.

_____

[2] The minutes of the state court trial following voir dire were not provided by the parties. Since the facts are not in dispute –– although the parties disagree as to the legal significance of those facts –– this court is relying on a "narrative summary" of the evidence provided in the submissions by petitioner and respondent both on direct appeal to the Appellate Division, First Department and in this court. See Douglas v. Portuondo, 232 F.Supp.2d 106, 106, n.1 (S.D.N.Y. 2002).

During voir dire, Romero's counsel moved to strike one prospective juror -- Salvador Mendez -- for cause. (<u>See</u> Voir Dire ("V.") at 452). The basis for the challenge emerged from Mr. Mendez's responses to inquiries by the court and the prosecutor. Mr. Mendez declared that he had once been the victim of a robbery and that no one had been arrested in connection with the incident. (V. 111-12). The judge asked Mr. Mendez whether he could nevertheless listen to the evidence in the present case and make a decision based on the facts of that case. (V. 113-116). Mr. Mendez gave assurances to the court that he could. (V. 113-16).

Thereafter, Mr. Mendez stated that he had earned a medical degree from his native country and that he was currently employed as a clinical laboratory analyst at a hospital. (V. 399-400). The prosecutor addressed Mr. Mendez and another juror who had a degree in science education, and the following dialogue ensued:

> THE PROSECUTOR: There may be medical testimony in this case, would you have a problem listening to a medical expert and say not using your own knowledge of science, but paying attention to what the expert had to say as the final determination of the medical testimony? Any body have a problem with that?
>
> PROSPECTIVE JUROR: No.
>
> PROSPECTIVE JUROR: No.
>
> THE PROSECUTOR: No?
>
> PROSPECTIVE JUROR: No.
>
> THE PROSECUTOR: All right.

5

And similarly because you guys deal with science, science is an exact thing, you have to have an exact determination.

In a courtroom case like this, the judge has given you the definition of reasonable doubt but reasonable doubt will not be to a mathematical or scientific certainty but you all can appreciate the difference between proving something scientifically and proving something in court is a different situation, not the same kind of standard, right?

PROSPECTIVE JUROR: Yes.

(V. 417-418).

Defense counsel then posed the following question to Mr. Mendez:

Now, there is an allegation that there were injuries suffered in this case and that the injuries were suffered by a man who's close to 60 years old.

Would you, as a medical technician who has a good understanding about medicine since you trained as a doctor formerly, would you have sympathy for that individual since you would have an understanding of the injuries that he suffered because of your background?

PROSPECTIVE JUROR: I have to hear the facts and to hear the condition of the injury. What kind of injury?

(V. 422-423).

Thereafter, the court, addressing all the prospective jurors, and in particular those "who have [a] scientific background and...a second language that may be used in connection with this trial," reminded them of their duty to rely only on evidence presented at trial. (V. 438). The judge cautioned the prospective jurors that they were not "witnesses in this case" but rather "finders of facts." (V. 438). The

court added: "to the extent that you may have some special expertise that is not common to the rest of the jurors, you must pretend that you do not have that expertise if you were selected and if you are in the jury room deliberating." (V. 438). Asked by the court whether they understood his statements, all of the prospective jurors responded "Yeah." (V. 438). Thereafter, the judge asked Mr. Mendez: "can you give us assurances that you will not utilize your expertise?" (V. 439). The following dialogue ensued in response to the court's question:

> PROSPECTIVE JUROR: Well, you see if the facts are scientific –
>
> THE COURT: I can't hear you sir.
>
> PROSPECTIVE JUROR: If the facts in the case of injury can clarify the case and say – and for me and say that that can help me to say that he's guilty or not guilty, so how come I'm going to put that aside.
>
> THE COURT: You must put that aside, sir, because the People will bring in their particular witnesses, if they have an expert that they'll bring in. You must rely on that expert's testimony of what may or may not be injuries.
> You may not – you may not serve as a hidden expert, if you will. In other words, you have to put aside any expertise that you have in connection with this case, that is with regard to deliberations. In other words, you can't share your expertise with your fellow jurors. Whatever you may know, you may utilize in your own decisions with regard to how you would vote. But you can't share that aspect of your views of the facts with your fellow jurors because then you would become an unknown witness who was not subject to cross examination.

(V. 438-40).

7

The court concluded by asking all of the prospective jurors whether they understood what had just been explained to them. The record indicates that the prospective jurors answered in unison: "Yes." (V. 440).

Defense counsel then challenged Mr. Mendez for cause, on the ground that, "in response to questioning regarding his use of his medical background or his understanding of scientific evidence, he seemed to be very concerned that his own understanding of it was different from that of the expert who is called to testify by the prosecution, that it may affect his decision." (V. 452). In response, the prosecutor argued that, once the court had explained that a juror must put his personal knowledge aside and "take the word of the expert that testified," Mr. Mendez affirmed that he would follow those instructions. (V. 452-53).

The court agreed with the prosecutor and denied defense counsel's application. (V. 453). Subsequently, defense counsel exercised a peremptory challenge to remove Mr. Mendez from the jury (V. 453), and exhausted all of his peremptory challenges before the conclusion of jury selection. (V. 653).

III. <u>Trial Proceedings, Conviction, and Sentence</u>

At trial, evidence was introduced by the prosecutor that in the course of conducting a robbery with another individual, petitioner, while attempting to flee, had struck the victim in the face with a metal object, breaking his jaw. (<u>See</u> Killian Aff., Ex. 1 at 3; Killian Aff., Ex. 2 at 9). The jury acquitted petitioner of robbery in the first degree but found him guilty of two counts of second-degree robbery. (<u>See</u> Killian Aff., Ex. 1 at 3,9; Killian Aff., Ex. 2 at 7).[3]

At a sentencing hearing on November 21, 2000, the court adjudicated petitioner to be a persistent violent felony offender based on his prior convictions for violent felonies in 1987 and 1992.[4] Justice Ruiz then imposed two concurrent indeterminate

---

[3] The court had instructed the jury that if it found the petitioner guilty of either robbery in the first degree or robbery in the second degree, it should stop deliberating, and that if it found petitioner not guilty of both, it should consider robbery in the third degree. (<u>See</u> Killian Aff., Ex. 1 at 9). The court did not charge the jury with the other indicted offenses because it concluded during an earlier charge conference that they were inconsistent. (<u>See</u> <u>id.</u> at 10.)

[4] According to the Persistent Violent Felony Offender Information Sheet, petitioner was convicted on April 10, 1987 on a charge of Burglary in the Second Degree, for which he was sentenced to two to six years, and on March 9, 1992 he was convicted of Criminal Possession of a Weapon, for which he was sentenced to thirty months to five years. (<u>See</u> Killian Aff., Ex. 9). Additionally, petitioner admitted his previous convictions before Justice Ruiz at the time of his sentencing on November 21,

prison terms of twenty years to life. (S2000. 3-13).

IV.   <u>Guilty Plea under October 8, 1999 Indictment</u>

On October 8, 1999, a Bronx County grand jury indicted petitioner, charging him with acting in concert with another in the commission of Robbery in the Second Degree, Robbery in the Third Degree, Grand Larceny in the Fourth Degree, and Criminal Possession of Stolen Property in the Fifth Degree. (<u>See</u> Killian Aff., Ex. 2 at 3). These charges stemmed from an incident on September 1, 1999, when petitioner and another individual entered an elevator and forcibly stole a money order from an individual. (<u>See</u> Killian Aff., Ex. 1 at 10).

In a proceeding on April 18, 2000, in the presence of his attorney, petitioner pled guilty to one count of Robbery in the Second Degree, in full satisfaction of the October 8, 1999 indictment. (<u>See</u> Sentencing, May 9, 2001 ("S2001.") 5). Petitioner entered his guilty plea with the explicit understanding that he could withdraw the plea in the event that the 2000 conviction were reversed on appeal. (S2001. 5-6). The Court (Honorable William Mogulescu, S.C.J.) sentenced Romero, as a persistent violent felony offender, to an indeterminate term of sixteen years to life, to run

2000. (<u>See</u> Sentencing, November 21, 2000 ("S2000.") 2-7).

concurrently with the sentence imposed after his 2000 trial. (S2001. 7).

V.   <u>Post-Conviction Proceedings</u>

Petitioner appealed his November 21, 2000 and May 9, 2001 convictions to the Appellate Division, First Department. (<u>See</u> Killian Aff., Ex. 1). He challenged the trial court's refusal to strike Mr. Mendez for cause, arguing that this denial violated his right to an impartial jury. (<u>Id.</u> at 11). Additionally, he argued that if the court reversed his conviction on appeal, his guilty plea to the other indictment must also be vacated because the plea had been induced by the court's promise that the sentence imposed on his plea would run concurrently with the sentence imposed after his 2000 trial. (<u>Id.</u> at 17).

On October 21, 2003, the Appellate Division unanimously affirmed the trial court's judgment of conviction, holding that the court had properly denied petitioner's challenge for cause. <u>See</u> <u>People v. Romero</u>, 309 A.D.2d 632, 765 N.Y.S.2d 786 (1$^{st}$Dept. 2003). According to the Court, "the prospective juror's responses did not cast doubt on his ability to be fair, or his ability or willingness to follow the court's instructions." <u>Id.</u> at 632, 765 N.Y.S.2d at 786 (<u>citing</u> <u>People v. Arnold</u> 96 N.Y.2d 358, 366-368, 729 N.Y.S.2d

51 (2001)). Petitioner subsequently sought leave to appeal to the New York Court of Appeals. On December 31, 2003, that court denied his application. See People v. Romero, 1 N.Y.3d 579, 775 N.Y.S.2d 795 (2003).

On April 28, 2004, petitioner filed a pro se motion pursuant to N.Y. Crim. Proc. L. ("CPL") § 440.20 to set aside his sentence. (See Killian Aff., Ex. 3). First, he argued that he had been improperly adjudicated as a persistent violent felony offender. Although his argument was none too clear, he principally argued that the trial judge had failed to satisfy the so-called "sequentiality requirement" of Penal Law § 70.04(1)(b)(ii). That provision requires that "[f]or the purpose of determining whether a prior conviction is a predicate violent felony conviction the following criteria shall apply:...(ii) Sentence upon such prior conviction must have been imposed before commission of the present felony." (See id. at 6-7). Second, he argued that his adjudication as a persistent violent felony offender was in contravention of the Supreme Court decision in Apprendi, 530 U.S. at 466, and its progeny. (See id. at 7-8). Third, Romero claimed that his trial counsel had failed to provide effective assistance when he advised petitioner not to challenge his adjudication as a persistent violent felony offender and failed to request a hearing to challenge his prior convictions. (See id. at 9-11).

In opposition, the State contended that petitioner had failed to explain how his 1987 and 1992 convictions were non-sequential, and insisted that he could not do so, since many years had passed between these predicate convictions and the offense now at issue, which had taken place in 1999. (See Killian Aff., Ex. 4 at 3 (citing CPL § 70.04(1)(b)(ii) and People v. Morse, 62 N.Y.2d 205, 223, 476 N.Y.S.2d 505 (1984))). Next, the State asserted that petitioner's Apprendi argument was misguided since Apprendi had held only that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (See id. at 3-4 (quoting Apprendi, 530 U.S. at 490)). As the State noted, the enhancement at issue under the persistent-violent-felony-offender statute relies only on prior convictions, and criminal history is not subject to the jury-trial holding in Apprendi. (See Killian Aff., Ex. 4 at 4). Third, the State argued that petitioner's ineffective-assistance claim was meritless because he "failed to establish that his attorney rendered less than meaningful representation in connection with his sentencing." (See id. at 4).

On December 3, 2004, the trial court denied petitioner's motion. (See Killian Aff., Ex. 5). In doing so, Justice Ruiz observed that Romero's criminal history was not in dispute, and she

also noted that the petitioner had "actually admitted his multiple and previous felony convictions (provable by certificates of conviction and a certified fingerprint comparison) at the time of his sentencing before [the judge]; he admitted the same at the time of his sentencing before Justice Mogulescu on the second action and a third time in his sworn papers underlying [the 440 motion]" and therefore could not "'lay off' on his attorney the 'error' of his admission of those convictions." (See id. at 2).

Petitioner sought leave to appeal to the First Department from this decision. (See Killian Aff., Ex. 6). In his application, petitioner stated that "[t]he question of law or fact which it is claimed ought to be reviewed is whether the Trial Court properly denied a motion to set aside sentence (C.P.L. 440.20 (1)), where there was a Constitutionally improper resolution of an issue concerning ineffective assistance of counsel which is reviewable for this Court." (See id. at ¶ 3). Additionally, petitioner stated that his section 440.20 motion was based "on the grounds: 1) Petitioner had ineffective assistance of counsel; 2) Counsel failed to object to Petitioner being sentenced as a persistent violent felony offender." (See id. at ¶ 5). Petitioner did not explicitly refer to either his "sequentiality requirement" argument or his Apprendi claim. By order dated April 7, 2005, the Appellate Division denied Romero's request. (See Killian Aff., Ex. 8).

14

Petitioner now seeks habeas relief from this court pursuant to 28 U.S.C. § 2254. In support of that petition, he has submitted a <u>pro</u> <u>se</u> memorandum of law in which he repeats the two points that he argued in his state-court appellate brief and the three points that he argued in his section 440.20 motion. (<u>See</u> Killian Aff., Ex. 1; Killian Aff. Ex. 3).

ANALYSIS

Romero asserts five claims in attacking his conviction.  We address them <u>seriatim</u>, but first summarize the basic standards that govern habeas review of state-court decisions.

## I.   Habeas Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)(discussing 28 U.S.C. § 2254(d)).  Once the state court has addressed the merits of petitioner's habeas claims, he may obtain relief only if the state court's ruling

15

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 497-98 (2d Cir. 2002).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard, 406 F.3d at 122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Id. (quoting Williams, 529 U.S. at 413). As for what constitutes an "unreasonable application" of settled law, "a federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Howard, 406 F.3d at 122 (quoting Fuller v. Gorczyk,

273 F.3d 212, 219 (2d Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 411)). The Supreme Court observed in <u>Williams</u> that "unreasonable" did not mean "incorrect" or "erroneous," <u>id.</u> at 410-11, noting that a writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decision [and] unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. As implied by this language, "Some increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 246 (2d Cir. 2006)(quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).

Under the habeas statute, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>McKinney v. Artuz</u>, 326 F.3d 87, 101 (2d Cir. 2003). <u>See generally</u> <u>Rice v. Collins</u>, 126 S.Ct. 969, 974 (2006).

II.  Denial of Romero's Challenge for Cause

Petitioner argues that his right to trial before an impartial jury was violated when the trial court denied defense counsel's challenge for cause to a prospective juror. Respondent argues that this claim is not cognizable upon habeas review because the suspect juror was not one of the jurors who ultimately sat. We agree.

Romero's claim of improper denial of a "for cause" challenge was addressed on the merits by the Appellate Division on his direct appeal, when it held that the trial court had properly denied the challenge. See Romero, 309 A.D.2d at 632, 765 N.Y.S.2d at 786. According to the Court, "the prospective juror's responses did not cast doubt on his ability to be fair, or his ability or willingness to follow the court's instructions." See id.. Thus, Romero's claim was decided "on the merits" by the Appellate Division. See, e.g., Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002)(state court decides "claim on the merits when it (1) disposes of the claim on the merits and (2) reduces its disposition to judgment."); Sellan, 261 F.3d at 311. See also Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005).

Trial courts have broad discretion as to the handling of for-cause challenges during jury selection. See, e.g., United States v.

Torres, 128 F.3d 38, 42-44 (2d Cir. 1997). The only claim appropriate for constitutional review is that the jury actually chosen was biased. See, e.g., United States v. Martin-Salazar, 528 U.S. 304, 311, 313-14, 316-17 (2000) (erroneous failure to excuse biased juror for cause does not give rise to claim if defendant then eliminated juror by peremptory challenge; only constitutional guarantee is Sixth Amendment right to impartial jury); Ross v. Oklahoma, 487 U.S. 81, 87-88 (1988); United States v. Perez, 387 F.3d 201, 208 (2nd Cir. 2004)(defendant in a non-capital case cannot succeed on a constitutional challenge based on an error during jury selection because he does not dispute that the jury that ultimately convicted him was fair and impartial).

The juror about whom petitioner complains was removed from the jury pool by defense counsel's use of a peremptory challenge, and he therefore played no part in convicting Romero. Even assuming, arguendo, that there was an indication of bias on the part of Mr. Mendez, this defect was cured when defense counsel removed him from the jury panel. Because petitioner neither claims nor shows that the jury that ultimately convicted him was in any way unfair or biased, he cannot successfully claim that his Sixth Amendment right to a fair trial was violated. See, e.g., Martinez-Salazar, 528 U.S. at 314-17.

Moreover, there is no indication from the record that the juror in question manifested any signs of bias. In arguing that Mr. Mendez was partial, petitioner points to his response to a request by the court for assurances that the prospective jurors with a scientific background not utilize their expertise. Mr. Mendez responded: "If the facts in the case of injury can clarify the case and say – and for me and say that that can help me to say that he's guilty or not guilty, so how come I'm going to put that aside." (V. 439). However, this statement does not evince bias on the part of Mr. Mendez. See Irwin v. Dowd, 366 U.S. 717, 723 (1961) (citing Holt v. United States, 218 U.S. 245, 248 (1910)) (stating that "findings of impartiality should be set aside only where prejudice is 'manifest'"). Rather, the quoted remark was a question posed to the court, which the court properly answered by stating: "you have to put aside any expertise that you have in connection with this case, that is with regard to deliberations...you can't share your expertise with your fellow jurors." (V. 440). Furthermore, when Justice Ruiz concluded by asking all of the prospective jurors whether they understood what she had just explained to them regarding the proper role of the jury in assessing evidence, the record indicates that the prospective jurors answered in unison: "Yes." (V. 440). Additionally, Mr. Mendez repeatedly gave assurances to the court that he could listen to the evidence presented and make a decision based on the facts in Romero's case.

(V. 113-16, 417-18).  Thus, even if Mr. Mendez had been seated as a juror, there is no evidence that he would have biased the jury.

As a related matter, petitioner argues that his 2001 guilty plea must be vacated in the event that the writ is granted with respect to his 2000 conviction, since he entered his guilty plea only after a promise by the court that the plea could be withdrawn if the trial conviction were later reversed. Respondent asserts that petitioner's claim is unexhausted because he did not raise it as a constitutional claim in the Appellate Division.  Additionally, respondent argues that the claim should be rejected on the merits.

We need not address the exhaustion question since Romero's requested relief must be denied in any event. 28 U.S.C. § 2254(b)(2). The short answer to petitioner's assertion is that since there is no basis to vacate his 2000 conviction, there is equally no basis to vacate his 2001 guilty plea.[5]

### III. The "Sequentiality" and *Apprendi* Claims

Petitioner argues that he was ineligible for sentencing as a

---

[5] We note in passing that on petitioner's state-court appeal, the State concurred with petitioner's point that if the 2000 conviction were vacated, so too should the 2001 conviction. (See Killian Aff., Ex. 2 at 18-19).

persistent violent felony offender because the crimes used to adjudicate him as such did not fulfill the "sequentiality requirement" of New York Penal Law § 70.04. He also asserts that the trial court's adjudication of him as a persistent violent felony offender violated his Sixth and Fourteenth Amendment rights and his rights under Apprendi. Respondent argues that these claims are unexhausted but procedurally barred because they were not raised at the appellate level. Additionally, respondent argues that under 28 U.S.C. § 2254(b)(2), these claims should be rejected on the merits because the sequentiality claim is not cognizable on habeas review and the Apprendi claim is meritless.

A.    Procedural-Bar Analysis

Petitioner originally raised his "sequentiality" and Apprendi claims in his section 440.20 motion. When he submitted an application pursuant to Crim. Proc. L. § 460.15 for leave to appeal the denial of his motion, he mentioned only his ineffective-assistance claim. His failure to pursue the sentencing claims on his leave application reflects non-compliance with the exhaustion requirement of section 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 841-47 (1999); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000). Having failed to exhaust his once-available state-court remedies, he no longer has

an available state-court vehicle through which to assert these claims, since he long ago completed his direct appeal and he cannot file another section 460.15 application. See CPL §460.12(2) (prohibiting a defendant from making more than one application). In such circumstances, the habeas court must deem the claim subject to procedural-bar analysis. See, e.g., Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

That analysis forecloses habeas review of these claims. Federal courts may not review claims that are procedurally precluded from state-court review unless the petitioner can show both "cause for the default and prejudice," or else demonstrate that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparacio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748-50). Cause may be demonstrated by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate prejudice, a habeas petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)(emphasis in original). A fundamental miscarriage of justice requires a showing "that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 126 S.Ct. 2064, 2077-78 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

Romero does not attempt to show cause for his procedural default or resultant prejudice, nor does he demonstrate that a miscarriage of justice will result if this court declines to review this claim. Thus, Romero's "sequentiality" and <u>Apprendi</u> claims are procedurally barred from habeas review.

B.   <u>The Merits</u>

Although we conclude that the petitioner's "sequentiality" and <u>Apprendi</u> claims are procedurally barred, even if we were to consider the substance of the claims the result would not change. These claims are plainly meritless.[6]

---

[6] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2); <u>see</u> <u>Jones v. Keane</u>, 329 F.3d 290, 294 n.6 (2d Cir. 2003).

Petitioner's claim concerning the court's alleged violation of the "sequentiality requirement of Penal Law § 70.04(1)(b)(ii)" (Killian Aff., Ex. 3 at 7; Pet. at 13) is baseless. That provision states: "(b) For the purpose of determining whether a prior conviction is a predicate violent felony conviction the following criteria shall apply: . . . (ii) Sentence upon such prior conviction must have been imposed before commission of the present felony." Petitioner has never explained why his 1987 and 1992 convictions do not meet this requirement, and in fact they plainly do since they occurred twelve and seven years, respectively, before petitioner committed the 1999 robbery. In short, petitioner's prior history unquestionably satisfied the requirements of section 70.04.[7]

Petitioner's other sentencing argument -- that the trial court "failed in its procedures under _Apprendi_" -- is equally meritless. The Supreme Court held in _Apprendi_ that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." _Apprendi_, 530 U.S. at

---

[7] As noted, there is no dispute as to the pertinent details of Romero's criminal history. Petitioner admitted his 1987 and 1992 convictions (1) in his own recitation of his criminal history in his section 440.20 motion, (2) before Justice Ruiz at the time of his sentencing on November 21, 2000 and (3) again before Justice Mogulescu at the time of his sentencing on May 9, 2001. (_See_ Killian Aff., Ex. 3 at 6; S2000. 2-7; S2001. 3-5).

489; See also United States v. Booker, 125 S.Ct. 738, 756 (2005) ("[W]e reaffirm our holding in Apprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). It follows that the facts of a defendant's criminal history, when used to increase the statutory maximum, are not subject to the Apprendi requirement, a rule recognized both before Apprendi, see Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998) (upholding sentence enhancement determined by judge that is based on prior convictions), and after it. See, e.g., United States v. Snype, 441 F.3d 119, 147-49 (2d Cir. 2006); United States v. Campbell, 300 F.3d 202, 212-13 (2d Cir. 2003); United States v. Santiago, 268 F.3d 151, 153-55 (2d Cir. 2001).

Petitioner was sentenced pursuant to N.Y. Penal Law § 70.08, which applies to defendants who have been convicted of a violent felony (as defined in N.Y. Penal Law § 70.02) and have previously been convicted of two or more predicate violent felonies, as defined in N.Y. Penal Law § 70.04(1)(b). Under Penal Law § 70.08, when a defendant is found to be a persistent violent felony offender "the court must impose an indeterminate sentence of imprisonment, the maximum of which shall be life imprisonment" and

a minimum term that varies depending on the grade of the offense of conviction. The persistent-violent-felony-offender provision of Penal Law § 70.08, under which Romero was sentenced, is triggered solely based on prior convictions. It follows that Romero's enhanced sentence does not violate <u>Apprendi</u>. <u>See</u>, <u>e.g.</u>, <u>James v. Artus</u>, 2005 WL 859245, at *16 (S.D.N.Y. April 15, 2005) (enhanced sentence under N.Y. Penal Law § 70.08 does not violate <u>Apprendi</u>).


IV.  <u>Ineffective-Assistance-of-Counsel Claim</u>


Romero's remaining argument is that his trial attorney was constitutionally ineffective for failing to contest his adjudication as a persistent violent felony offender. Since the Appellate Division rejected this claim on the merits, habeas relief will be unavailable to petitioner unless he can demonstrate that the First Department's decision was either contrary to, or an unreasonable application of, Supreme Court decisional law or else rested on an unreasonable finding of facts. 28 U.S.C. §§ 2254(d)(1) & (2). Petitioner makes no such showing.


A.  <u>Legal Criteria</u>


To demonstrate a Sixth Amendment violation, the petitioner must show that his lawyer's performance was "so defective that

'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' . . . and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Brown v. Artuz</u>, 124 F.3d 73, 79 (2d Cir. 1997) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). As summarized in <u>Brown</u>:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," . . . and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>Id.</u> at 79-80 (quoting <u>Strickland</u>, 466 U.S. at 690, 694). <u>Accord</u>, <u>e.g.</u>, <u>Henry</u>, 409 F.3d at 62-64; <u>Cox v. Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004).


It bears emphasis that the <u>Strickland</u> standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, in weighing an ineffective-assistance claim the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . ." and must "determine whether, in light of all the circumstances, .

. . [counsel's] acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. <u>Accord</u>, <u>e.g.</u>, <u>Loliscio v. Goord</u>, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." <u>Aparicio</u>, 269 F.3d at 95 (citing <u>Strickland</u>, 466 U.S. at 694).

B.     <u>Assessment of Petitioner's Claim</u>

Petitioner criticizes his trial counsel for advising him to "waive his right" to challenge his adjudication as a persistent violent felony offender and for not "having a hearing to challenge those prior convictions, as it is his Constitutional right to do so." (<u>See</u> Petitioner Memorandum of Law and Traverse in Support of Petition for Writ of Habeas Corpus ("Traverse"), at 21). This claim

is meritless.

In articulating this complaint, Romero does not make clear whether he believes that his attorney should have challenged the accuracy of the Persistent Violent Felony Offender Sheet or the validity of the prior convictions on which the predicate-felony adjudication rested.[8] In this regard, we note that under New York law a defendant is entitled to contest the fact of the asserted prior convictions –- in which case the State must prove their existence beyond a reasonable doubt, see CPL § 400.15(7)(a) -- and is also entitled to challenge their legality based on a showing that the prior convictions violated his federal constitutional rights. See CPL § 400.15(7)(b). Compare, e.g., Custis v. United States, 511 U.S. 485, 491-92 (1994)(federal defendant may challenge prior convictions used as sentence enhancer under Armed Career

---

[8] At the time of sentencing, Romero was advised of his right to challenge the allegations in the predicate violent offender statement filed by the State, including his right to challenge the constitutionality of the prior convictions (S2000. 5-7; S. 2001 3-5), and his failure to do so constitutes a waiver of that right. See People v. Andre, 132 A.D.2d 560, 560, 517 N.Y.S.2d 286, 287 (2nd Dept. 1987)(defendant who was "fully advised of his right to a hearing to controvert the predicate felony statement filed by the People, including the right to challenge the constitutionality of his prior conviction" and failed to "'object to, or controvert the use of, his prior felony conviction as a predicate felony, or request a hearing theron'" waived his right to "'challenge that conviction and its validity'"). See also People v. Crippa, 245 A.D.2d 811, 812, 666 N.Y.S.2d 781, 782 (3rd Dept. 1997) ("Defense counsel's failure to challenge the predicate felony statement does not establish that counsel was ineffective").

Criminal Act, but only on claim of denial of counsel under <u>Gideon</u>).

However construed, petitioner's argument fails. The accuracy of the predicate felony history before the trial court was never in dispute. Petitioner himself admitted to having been previously convicted of violent felonies in 1987 and 1992. (Killian Aff., Ex. 3 at 6; <u>see</u> <u>also</u> Killian Aff., Ex. 9: Persistent Violent Felony Offender Sheet). Therefore, petitioner's trial counsel would have had no reason to advise him to challenge his adjudication as a persistent violent felony offender in order to contest the fact of the prior convictions. As for the validity of the prior convictions, petitioner never suggested, much less demonstrated -- either in state court or here -- that they were vulnerable to any constitutional challenge. Hence counsel's advice to Romero not to challenge the predicate-felony adjudication was irreproachable, and the state court's decision denying Romero's Sixth Amendment claim was entirely correct, and manifestly not contrary to, or an unreasonable application of Supreme Court precedent. <u>See</u> <u>United States v. DeLaPava</u>, 268 F.3d 157, 163 (2d Cir. 2001) (counsel not ineffective if the underlying claim has no merit); <u>Seifert v. Keane</u>, 74 F.Supp.2d 199, 206 (E.D.N.Y. 1999) (failure to refute predicate felony statement does not establish ineffective assistance), <u>aff'd</u> <u>mem.</u>, 205 F.3d 1324 (2d Cir. 2000). Consequently, Romero's Sixth Amendment claim is entirely meritless.

## CONCLUSION

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard C. Casey, Room 1350, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: New York, New York**
**August 17, 2006**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Nancy D. Killian, Esq.
Assistant District Attorney
  for Bronx County
198 East 161st Street
Bronx, New York 10451

Mr. Edwin Romero
# 01-A-3015
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

33